IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TARAHJAY M. ROSS,                          :
    Plaintiff                          :
                      :        No. 1:21-cv-02080
       v.                          :
                      :        (Judge Kane)
LT. FISS, et al.,                          :
    Defendants                         :

**MEMORANDUM**

On December 13, 2021, pro se Plaintiff Tarahjay M. Ross ("Plaintiff"), who is presently incarcerated as a pretrial detainee at the Franklin County Jail ("FCJ") in Chambersburg, Pennsylvania, initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 against Lieutenant Fiss ("Fiss"), Corrections Officers Heinbaugh ("Heinbaugh"), Thomas ("Thomas"), Donatto ("Donatto"), and Cox ("Cox"), and Property Clerk Yates ("Yates"), all of whom are employed at the FCJ.  (Doc. No. 1.)  Plaintiff has also filed a motion for leave to proceed in forma pauperis (Doc. No. 2) and a motion to appoint counsel (Doc. No. 4).  Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"),[1] the Court will perform its mandatory screening of Plaintiff's complaint.  For the reasons set forth below, the Court will grant Plaintiff leave to proceed in forma pauperis, partially dismiss his complaint with leave to amend, and deny without prejudice his motion to appoint counsel.

I.      **BACKGROUND**

In his complaint, Plaintiff alleges that on July 5, 2021, Defendant Fiss and Officer Baker took him out of his cell and cuffed him behind his back to go see the nurse.  (Doc. No. 1 at 5.)

---

[1] See The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

When Plaintiff arrived at medical, the nurse asked him to step on the scale because Plaintiff had submitted a sick call slip with concerns about being underweight.  (Id.)  Plaintiff stepped off the scale, and Defendant Fiss pulled him out of the medical department by his arm.  (Id.)  Plaintiff stated that Defendant Fiss was only doing this to him because he was cuffed, and Defendant Fiss responded, "I already heard that you had it handed to you, talking about what happen[ed] to me back in Dauphin."  (Id.)  Once Plaintiff returned to his cell, Defendant Fiss had him place his hands through the slot in his cell door for the cuffs to be removed.  (Id.)  Defendant Fiss removed the left cuff and "then acted as if [Plaintiff's] right hand wasn't out far enough."  (Id.)  Plaintiff avers that Defendant Fiss "started to yank [his] right arm/wrist all the way through the hole.  (Id.)  Plaintiff submitted a grievance about the incident because he had bruises on his wrist.  (Id.)  The Correctional Treatment Specialist responded that efforts were made to improve professionalism and that Plaintiff should submit a sick call slip to address any medical concerns.  (Id.)

Plaintiff further avers that on October 15, 2021, he was talking to Jim, a mental health worker, when a corrections officer told Plaintiff to prepare for a professional visit.  (Id. at 6.)  Defendant Heinbaugh and Officer Ott brought Plaintiff out of his cell and placed him in cuffs and a belt around his waist because he was in administrative segregation at the time.  (Id.)  Plaintiff asked Officer Ott to loosen the right cuff; "she did so but tighten[ed] it back up to[o] tight and said she wasn't doing it again."  (Id.)  Plaintiff asks for the cuff to be loosened again.  (Id.)  Defendant Heinbaugh pushed Plaintiff forward and then threw him up against the wall, bending his right arm up while screaming at Plaintiff to stop resisting.  (Id.)  Plaintiff started to scream for Jim to help him; Jim said he had no control over the officers.  (Id.)

Defendant Heinbaugh told Plaintiff that he was not going to his visit.  (Id.)  Plaintiff was forced back into his cell while screaming that he wanted his visit.  (Id. at 6-7.)  Lieutenant Petrill

2

came to Plaintiff's cell, and Plaintiff asked to see a nurse because his right wrist hurt "due to the cuff sliding over [his] bone" and was visibly swollen. (Id. at 7.) Plaintiff ultimately went to his visit and saw the nurse afterward. (Id.) He received Motrin and was scheduled for X-rays. (Id.) Lieutenant Petrill took photographs of Plaintiff's wrist and wrote an incident report; Plaintiff's request for a copy of the report was denied. (Id.) According to Plaintiff, Defendant Heinbaugh was at his cell on October 31, 2021 for "med pass;" Plaintiff avers that "there should've been some type of separation" between him and Defendant Heinbaugh. (Id.)

Plaintiff avers that on October 16, 2021, Defendant Thomas and Officer Woodward "darted up to the top tier due to Woodward saying he heard something sliding across the floor." (Id. at 8.) According to Plaintiff, prior to October 16, 2021, he had submitted a grievance about these officers refusing to turn on the one television on the block. (Id.) Plaintiff avers that on October 3, 2021, Defendant Thomas refused to turn on the television, and Officer Woodward "stuck up his middle finger but did it as if he were pushing up his glasses." (Id.) As for October 16, 2021, Plaintiff avers that Officer Woodward instructed Defendant Thomas to cuff Plaintiff. (Id.) Plaintiff responded that he had not done anything; Officer Woodward told Plaintiff to cuff up or be sprayed with mace. (Id. at 8-9.) Plaintiff unbuttoned his jumper from around his waist and walked to the back of his cell so that he could put on his jumper completely without exposing himself. (Id. at 9.) Plaintiff "felt wetness [on] the back of his head" and realized he was being sprayed with oleoresin capsicum ("OC") spray. (Id.) Plaintiff tried to wash his eyes out at his sink when he heard Lieutenant Petrill ask him to cuff up. (Id.) Plaintiff refused, arguing that when he tried to cuff up before he got sprayed for no reason. (Id.) He was subsequently cuffed and taken out of his cell with no buttons fastened. (Id.) Plaintiff appeared before the hearing officer on October 17, 2021. (Id.) The hearing officer sanctioned Plaintiff

3

with thirty (30) days' disciplinary custody.  (Id.)  Plaintiff's appeal of the sanction was denied.

(Id.)

Officer Woodward packed Plaintiff's personal property on October 16, 2021 following

the incident set forth above.  (Id. at 9-10.)  Plaintiff received some of his property that day

around midnight, but found that some legal papers and mail were missing.  (Id.)  Plaintiff

submitted several inmate request forms to Defendant Yates requesting the rest of his paperwork.

(Id.)  He avers that she refused to give him his papers.  (Id.)  He also avers that Defendant Yates

told him that he would have to wait until he was off of disciplinary segregation to get all of his

paperwork back.  (Id.)  Plaintiff claims that Defendant Yates caused "a delay of [him] doing

legal work."  (Id.)

On October 27, 2021, Defendant Donatto turned off the televisions on Plaintiff's block.

(Id. at 11.)  Plaintiff asked other inmates to ask Defendant Donatto to turn them back on;

Defendant Donatto refused because the jail was on lockdown.  (Id.)  According to Plaintiff,

Defendant Donatto said, "Let [Plaintiff] cry."  (Id.)  Plaintiff responded that he was not crying

and that he could not tell the other inmates no; Defendant Donatto then said, "shut [up] you

nappy head n*****."  (Id.)  Plaintiff asked to see a lieutenant and was refused; he began to kick

his cell door in an unsuccessful attempt to have a lieutenant come talk to him.  (Id.)  Defendant

Donatto then came to Plaintiff's cell and began kicking the door.  (Id.)  According to Plaintiff,

Defendant Donatto knew that Plaintiff was writing a grievance about him, so he decided to issue

two false misconducts against Plaintiff.  (Id.)  Plaintiff avers that he was charged with

threatening to "f*** up" Defendant Donatto and with kicking his door to have others do the

same.  (Id.)  Plaintiff also alleges that Defendant Donatto walked by his cell and refused him

dinner later that day.  (Id.)

Plaintiff alleges further that on September 5, 2021, Defendant Cox brought him out of his cell and transported him to the shower.  (Id. at 12.)  Once in the shower, Plaintiff asked Defendant Cox for a paper towel because someone had left a bar of soap in the soap dish.  (Id.) She gave him a towel; Plaintiff removed the soap and threw it out.  (Id.)  He avers that his bar of soap fell from where it was sitting, and Defendant Cox refused to pick it up for him.  (Id.) Ultimately, Plaintiff's cellmate retrieved the soap for him.  (Id.)  Plaintiff alleges that during this time, his jumper was around his waist.  (Id.)  Early the next day, Plaintiff learned that Defendant Cox issued two allegedly false misconducts charging him with exposing himself and threatening to "drop kick" her.  (Id.)  According to Plaintiff, he "beat both write ups" during his disciplinary hearing.  (Id.)

Plaintiff avers that he has suffered from swollen joints, PTSD, mental abuse, bruises, trauma, and pain and suffering.  (Id. at 13.)  Based on the foregoing, Plaintiff asserts violations of his Fourth, Eighth, and Fourteenth Amendment rights, as well as violations of 18 U.S.C. § 241. (Id.)  He also asserts a claim for defamation.  (Id.)  The Court's liberal construction of Plaintiff's complaint also leads the Court to conclude that Plaintiff is asserting First Amendment claims as well.  As relief, Plaintiff requests monetary damages.  (Id.)

## II.     LEGAL STANDARDS

### A.      Screening and Dismissal of Prisoner Complaints

Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  See 28 U.S.C. § 1915A(a).  If a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint.  See id. § 1915A(b)(1). District courts have a similar screening obligation with respect to actions filed by prisoners

proceeding in forma pauperis and prisoners challenging prison conditions.  See id.

§ 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines

that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . ."); 42

U.S.C. § 1997e(c)(1) ("The [C]ourt shall on its own motion or on the motion of a party dismiss

any action brought with respect to prison conditions under section 1983 of this title . . . by a

prisoner confined in any jail, prison, or other correctional facility if the [C]ourt is satisfied that

the action . . . fails to state a claim upon which relief can be granted.").

In dismissing claims under §§ 1915(e), 1915A, and 1997e, district courts apply the

standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure.  See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999).  To avoid

dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show

that its claims are facially plausible.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v.

UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The plausibility standard requires more

than a mere possibility that the defendant is liable for the alleged misconduct.  "[W]here the

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"

Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).  When evaluating the plausibility of a

complaint, the Court accepts as true all factual allegations and all reasonable inferences that can

be drawn from those allegations, viewed in the light most favorable to the plaintiff.  See id. at

679; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the Court

must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause

of action" will not survive a motion to dismiss.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544,

555-56 (2007).

Based on this standard, the United States Court of Appeals for the Third Circuit has

identified the following steps that a district court must take when reviewing a Rule 12(b)(6)

motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any

conclusory allegations contained in the complaint that are "not entitled" to the assumption of

truth; and (3) determine whether any "well-pleaded factual allegations" contained in the

complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp.,

629 F.3d 121, 130 (3d Cir. 2010). In addition, in the specific context of pro se prisoner

litigation, a district court must be mindful that a document filed pro se is "to be liberally

construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however

inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by

lawyers." See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted)

(quoting Estelle, 429 U.S. at 106).

**B.      Section 1983 Standard**

Section 1983 is the vehicle by which private citizens may seek redress for violations of

federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. The statute

states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress.

Id. "Section 1983 is not a source of substantive rights, but merely a method to vindicate

violations of federal law committed by state actors." See Gonzaga Univ. v. Doe, 536 U.S. 273,

284-85 (2002). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the

conduct complained of was committed by persons acting under color of state law; and (2) the

conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

## III.    DISCUSSION

### A.    Plaintiff's Complaint

#### 1.    Claims Pursuant to 18 U.S.C. § 241

As noted supra, Plaintiff avers that Defendants' actions violated 18 U.S.C. § 241.  This statute, however, is a civil rights-related conspiracy statute for which there is no private cause of action.  See Carpenter v. Ashby, 351 F. App'x 684, 688 (3d Cir. 2009) (agreeing with the district court's "dismissal of the 18 U.S.C. § 241 and § 242 claims" because "[n]either statute creates a civil cause of action").  Accordingly, Plaintiff's claims pursuant to 18 U.S.C. § 241 will be dismissed.

#### 2.    Eighth Amendment Claims

Plaintiff asserts that Defendants' actions violated his Eighth Amendment rights.  (Doc. No. 1 at 13.)  The Eighth Amendment, however, "was designed to protect those convicted of crimes and consequently the [Cruel and Unusual Punishments] Clause applies only after the State has complied with constitutional guarantees traditionally associated with criminal prosecutions."  See Whitley v. Albers, 475 U.S. 312, 318 (1986) (citation and internal quotations omitted).  Therefore, the Eighth Amendment's Cruel and Unusual Punishments Clause does not apply until "after sentence and conviction."  See Graham v. Connor, 490 U.S. 386, 392 n.6 (1989).  As noted supra, Plaintiff indicates that he is a pretrial detainee.  The Eighth Amendment, therefore, does not apply in the instant case, and Plaintiff's Eighth Amendment claims will be dismissed.

### 3.    Fourth Amendment Claims

Plaintiff appears to allege that Officer Woodward violated his Fourth Amendment rights by packing his property and that Defendant Yates violated his Fourth Amendment rights by keeping control over certain legal paperwork and not providing that to Plaintiff.  (Doc. No. 1 at 10.)  The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures."  However, "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."  See Hudson v. Palmer, 468 U.S. 517, 526 (1984).  Thus, the taking of Plaintiff's property, including his legal paperwork, did not violate the Fourth Amendment, and Plaintiff cannot maintain such a claim. Cf. Crosby v. Piazza, 465 F. App'x 168, 172 (3d Cir. 2012) (concluding that the inmate-plaintiff could not maintain a Fourth Amendment claim regarding the seizure of certain commissary items during a cell search).

### 4.    First Amendment Claims

While Plaintiff has not explicitly indicated that he is setting forth First Amendment claims, the Court's liberal construction of his complaint leads the Court to conclude that Plaintiff may be attempting to set forth First Amendment access to the courts and retaliation claims.  The Court considers such claims below.

#### a.    Access to the Courts Claim

In his complaint, Plaintiff alleges that Defendant Yates "caused a delay of [him] doing legal work" by withholding certain legal paperwork from him.  (Doc. No. 1 at 10.)  It is well settled that inmates have a right to access the courts.  See Lewis v. Casey, 518 U.S. 343, 350 (1996).  To set forth a claim that he was denied access to the courts, Plaintiff must allege that his attempts to pursue a legal claim were hindered and that he suffered an actual injury.  See id. at

351. "[P]risoners may only proceed on access-to-courts claims in two types of cases, challenges

(direct or collateral) to their sentences and conditions of confinement." Monroe v. Beard, 536

F.3d 198, 205 (3d Cir. 2008) (citing Lewis, 518 U.S. at 353-55).  Plaintiff's complaint, as pled,

fails to set forth a plausible access to the courts claim because Plaintiff has not alleged any facts

about the merits of the underlying claims he wished to pursue, let alone allege that he suffered an

actual injury.  Accordingly, Plaintiff's First Amendment access to the courts claim will be

dismissed.

### b.        Retaliation Claim

In his complaint, Plaintiff appears to suggest that Defendants Thomas retaliated against

him for writing grievances by demanding that Plaintiff cuff up and using OC spray against him

for no reason.  (Doc. No. 1 at 8-9.)  Plaintiff also avers that Defendant Donatto knew that

Plaintiff was going to submit a grievance about him and issued him two (2) false misconducts.

(Id. at 11.)

An inmate stating a retaliation claim pursuant to the First Amendment bears the burden of

satisfying three (3) elements.  First, a plaintiff must prove that he was engaged in a

constitutionally protected activity.  See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).

Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of

prison officials."  See id. (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).  This

requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary

firmness' from exercising his First Amendment rights."  See id. (quoting Suppan v. Dadonna,

203 F.3d 228, 235 (3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally

protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  See

id. at 333-34 (quoting Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.  See Delli Santi v. CNA Ins. Cos., 88 F.3d 192, 199 n.10 (3d Cir. 1996).  Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation.  See Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997).  If a prisoner establishes a prima facie case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  See Rauser, 241 F.3d at 334.  If the prison officials can make this showing, it defeats the retaliation claim.  See Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002).  The Court's reading of Plaintiff's complaint leads the Court to conclude that Plaintiff has set forth plausible First Amendment retaliation claims against Defendants Thomas and Donatto.  Accordingly, Plaintiff may proceed on those claims.

### 5.      Fourteenth Amendment Claims

#### a.      Excessive Force

Plaintiff alleges that on July 5, 2021, Defendant Fiss used excessive force against him by yanking him out of the medical department by his arm and yanking his right arm and wrist through the slot in Plaintiff's cell door when trying to uncuff him.  (Doc. No. 1 at 5.)  Plaintiff further alleges that on October 15, 2021, Defendant Heinbaugh used excessive force against him by throwing him up against a wall and bending his harm back.  (Id. at 6.)  He also appears to aver

that on October 16, 2021, Defendant Thomas used excessive force against him by spraying him with OC spray.  (Id. at 9.)

Because Plaintiff was a pretrial detainee during all relevant times, the Due Process Clause of the Fourteenth Amendment governs his excessive force claim.  See Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015) (noting that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment" (quoting Graham v. Conner, 490 U.S. 386, 395 n.10 (1989))).  To set forth a Fourteenth Amendment due process claim based on excessive force, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable."  See Jacobs v. Cumberland Cty., 8 F.4th 187, 194 (3d Cir. 2021) (quoting Kingsley, 576 U.S. at 396-97).  Courts consider the following factors to determine whether an officer used "objectively unreasonable" force:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

See id. (quoting Kingsley, 576 U.S. at 397).  The Court's reading of Plaintiff's complaint leads the Court to conclude that Plaintiff has set forth plausible Fourteenth Amendment excessive force claims against Defendants Fiss, Heinbaugh, and Thomas.  Accordingly, Plaintiff may proceed on those claims.

### b.    Loss of Property

Plaintiff avers that he is asserting a claim for seizure of property, presumably for the legal property that was withheld from him.  (Doc. No. 1 at 13.)  However, neither negligent nor intentional deprivations of property by state officials give rise to a due process violation if state law provides adequate post-deprivation remedies.  See Daniels v. Williams, 474 U.S. 327, 328 (1986) (negligent acts of officials causing unintentional loss of property do not violate due

process); Hudson v. Palmer, 468 U.S. 517, 533 (1984) (intentional deprivation of property does

not violate due process if meaningful post–deprivation remedy for loss is available).  In the

instant case, FCJ's grievance procedure provided an adequate post-deprivation remedy to

Plaintiff.  See Tillman v. Lebanon Cty. Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000).

Pennsylvania state law also provides an adequate remedy for prison officials' unlawful

deprivation of inmate property.  See 42 Pa. Cons. Stat. Ann. § 8522(b)(3); see also Shakur v.

Coelho, 421 F. App'x 132, 135 (3d Cir. 2011) (noting that the Pennsylvania Tort Claims Act

provides adequate remedy for willful destruction of property).  Therefore, Plaintiff's Fourteenth

Amendment procedural due process claim regarding the loss of his property is subject to

dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because Plaintiff cannot state a cognizable

constitutional claim.

### c.      Verbal Harassment Claim

Plaintiff also suggests that he is raising a claim for "offensive speech."  (Doc. No. 1 at

13.)  Presumably, Plaintiff is basing such a claim on his allegation that Defendant Donatto stated,

"shut [up] you nappy head n*****."  (Id. at 11.)  While the Court does not condone the use of

such offensive language, "allegations of verbal abuse or threats, absent any injury or damage, are

not cognizable under § 1983."  See Brown v. Hamilton Twp. Police Dep't Mercer Cty., N.J., 547

F. App'x 96, 97 (3d Cir. 2013).  The Court, therefore, will dismiss Plaintiff's verbal harassment

claim.

### d.      Due Process Claims

#### i.      Procedural Due Process Claims

Plaintiff next appears to suggest that Defendants Thomas, Donatto, and Cox violated his

due process rights by issuing allegedly false misconducts.  (Doc. No. 1 at 9, 11-12.)  The Third

Circuit Court of Appeals has noted in a non-precedential opinion that, "[g]enerally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'"  See Kanu v. Lindsey, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting Rapier v. Harris, 172 F.3d 999, 1003-06 (7th Cir. 1999)).  With respect to pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in Wolff v. McDonnell, 418  U.S. 539 . . . (1974)."  See Kanu, 739 F. App'x at 116.  Such protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence."  See id. (citing Wolff, 418 U.S. at 563-66).  Moreover, while "the filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process," see Seville v. Martinez, 130 F. App'x 549, 551 (3d Cir. 2005), "[d]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports."  See Thomas v. McCoy, 467 F. App'x 94, 97 (3d Cir. 2012).

Plaintiff's complaint, as pled, fails to set forth a due process claim against Defendants Thomas, Donatto, and Cox.  Plaintiff cannot maintain a due process claim solely on the basis that he believes the misconducts issued against him were false.  See Seville, 130 F. App'x at 551.  Moreover, nowhere in the complaint does Plaintiff allege that he was not provided the protections set forth in Wolff.  Accordingly, Plaintiff's Fourteenth Amendment due process claims will be dismissed.

####        ii.        Defamation Claim

Finally, Plaintiff vaguely asserts a claim for "defamation of character." (Doc. No. 1 at

13.) However, "reputation alone is not an interest protected by the Due Process Clause." See

Dee v. Borough of Dunmore, 549 F.3d 225, 233 (3d Cir. 2008). Rather, "to make out a due

process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to

his reputation plus deprivation of some additional right or interest" guaranteed by the

Constitution or state law. See id. at 233-34 (emphasis omitted). Moreover, "federal courts are

not to view defamatory acts as constitutional violations." See Boyanowski v. Capital Area

Intermediate Unit, 215 F.3d 396, 401 (3d Cir. 2000). In the instant case, Plaintiff has failed to

allege facts suggesting that he suffered a stigma to his reputation plus the deprivation of some

other additional right or interest. Plaintiff's defamation claim, therefore, will be dismissed.

####        e.        Equal Protection Claims

In his complaint, Plaintiff avers that he is asserting claims for discrimination and

"discriminative racial bias." (Doc. No. 1 at 13.) The Court construes Plaintiff to be asserting

violations of the Fourteenth Amendment's Equal Protection Clause. The Equal Protection

Clause requires all persons "similarly situated" to be treated alike by state actors. See City of

Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Traditionally, to maintain a § 1983

claim under the Equal Protection Clause, a plaintiff must demonstrate that he "receiv[ed]

different treatment from that received by other individuals similarly situated." See Keenan v.

City of Philadelphia, 983 F.2d 459, 465 (3d Cir. 1992) (citation omitted). However, where a

plaintiff alleges that he alone "has been intentionally treated differently from others similarly

situated and that there is no rational basis for the difference in treatment," he may raise a "class

of one" equal protection claim. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

To maintain such a claim, a plaintiff must establish that he has been irrationally singled out for disparate treatment.  See id.  To "state a claim under [a class of one theory], a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."  See Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).  When alleging the existence of similarly situated individuals, "bald assertion[s] that other[s] . . . were treated in a dissimilar manner" will not suffice.  See Young v. New Sewickley Twp., 160 F. App'x 263, 266 (3d Cir. 2005).

While Plaintiff's complaint suggests that he is African-American, the complaint is devoid of facts alleging that any of the named Defendants treated him differently based upon his race.  Moreover, to the extent Plaintiff seeks to state an Equal Protection claim based upon a class of one theory, he fails to allege facts suggesting that Defendants intentionally treated him differently from others similarly situated.  Plaintiff's bald assertions of discrimination and "discriminative racial bias" are insufficient to maintain a Fourteenth Amendment Equal Protection claim.  See Young, 160 F. App'x at 266.  Plaintiff's Fourteenth Amendment Equal Protection claim will, therefore, be dismissed.

### B.      Leave to Amend

Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  See Foman v. Davis, 371 U.S. 178, 182 (1962).  The Court may deny a motion to amend where there is "undue delay, bad faith[,] or

16

dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." See id.  The Court must also determine whether a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim upon which relief may be granted.  See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002).

Based on the foregoing, it would be futile to allow Plaintiff to amend the following claims: (1) his claims pursuant to 18 U.S.C. § 241; (2) his Eighth Amendment claims; (3) his Fourth Amendment claims; and (4) his Fourteenth Amendment claims regarding loss of property and verbal harassment.  However, the Court cannot conclude that it would be futile or prejudicial to grant Plaintiff leave to file an amended complaint regarding the following claims: (1) his First Amendment access to the court claim; and (2) his Fourteenth Amendment procedural due process, defamation, and equal protection claims.

Plaintiff is advised that the amended complaint must be complete in all respects.  It must be a new pleading that stands by itself without reference to the original complaint or any other document already filed.  The amended complaint should set forth Plaintiff's claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure. Each paragraph should be numbered.  It should specify which actions are alleged as to which defendants and sufficiently allege personal involvement of the defendant in the acts that he claims violated his rights.  Mere conclusory allegations will not set forth a cognizable claim.  If Plaintiff fails to file an amended complaint, the above-captioned action will proceed only as to his excessive force claims against Defendants Fiss, Heinbaugh, and Thomas, as well as his retaliation claims against Defendants Thomas and Donatto.

C.      **Motion to Appoint Counsel**

Plaintiff has filed a motion to appoint counsel, noting that his "imprisonment will greatly limit his ability to litigate." (Doc. No. 4 at 1.)  He avers that the issues are complex "and will require significant research and investigation." (Id.)  Plaintiff argues that he has "limited access to the law library and limited knowledge of the law." (Id.)  Plaintiff also asserts that a trial "will likely involve conflicting testimony and counsel would better enable [him] to present evidence and cross-examine witnesses." (Id.)

Although prisoners have no constitutional or statutory right to the appointment of counsel in civil cases, district courts have broad discretionary power to appoint counsel for indigent civil litigants under 28 U.S.C. § 1915(e)(1). See Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir. 2002).  In Tabron v. Grace, the Third Circuit Court of Appeals developed a non-exhaustive list of factors to aid district courts in determining whether to appoint counsel for such litigants. See Tabron v. Grace, 6 F.3d 147, 155-57 (3d Cir. 1993).  Such factors include: the plaintiff's ability to present his case; the complexity of the legal and discovery issues in the case; the amount of factual investigation that will be required; the necessity of expert witnesses; and whether "witness credibility is a key issue." See id.  Additionally, "[a]s a threshold matter, a district court must assess whether the claimant's case has some arguable merit in fact and law." See Montgomery, 294 F.3d at 498-99 (citing Tabron, 6 F.3d at 155).  Finally, the plaintiff's ability to present his case is the most significant consideration, based upon his "education, literacy, prior work experience, and prior litigation experience . . . along with [his] ability to understand English . . . [and] the restraints placed upon a prisoner plaintiff by confinement." See id. at 501 (internal quotation marks and citations omitted).

18

The Court concludes that the <u>Tabron</u> factors do not warrant appointing counsel at this time.  Plaintiff has the apparent ability to read, write, and understand English, as well as the ability to litigate this action <u>pro se</u>, as demonstrated by his filing of a complaint.  Accordingly, there is no indication that Plaintiff "presently suffers from any impediment unusual to other <u>pro se</u> litigants that appear before this Court."  <u>See</u> <u>Segura v. Wetzel</u>, No. 17-cv-0931, 2017 WL 3495184, at *2 (M.D. Pa. Aug. 14, 2017).  Additionally, this Court's duty to construe <u>pro se</u> pleadings liberally, <u>see</u> <u>Riley v. Jeffes</u>, 77 F.2d 143, 147-48 (3d Cir. 1985), coupled with Plaintiff's apparent ability to litigate this action, militates against the appointment of counsel at this time.  The Court notes further that there is not "a large group of attorneys [that] would represent this action in a <u>pro bono</u> capacity."  <u>See</u> <u>Wilson v. Horowitz</u>, No. 3:18-cv-2237, 2019 WL 6716122, at *1 (M.D. Pa. Dec. 9, 2019).  Finally, with respect to Plaintiff's concerns regarding limited law library access, if Plaintiff requires extensions of time to respond to future pleadings and Orders requiring a response, he may request such from the Court at the appropriate time.  In the event that future proceedings demonstrate the need for counsel, however, the Court may reconsider this matter either <u>sua sponte</u> or upon a motion properly filed by Plaintiff.

IV.   **CONCLUSION**

For the foregoing reasons, the Court will grant Plaintiff leave to proceed <u>in forma pauperis</u> (Doc. No. 2) and partially dismiss his complaint (Doc. No. 1) for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  The Court will afford Plaintiff thirty (30) days from the date of the Order accompanying this Memorandum in which to file an amended complaint, consistent with the Court's discussion herein.  If Plaintiff fails to file an amended complaint, the above-captioned action will proceed on his excessive

20

force claims against Defendants Scott, Weaver, Chaz, and Danner.  Plaintiff's motion to appoint

counsel (Doc. No. 4) will be denied without prejudice.  An appropriate Order follows.