IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TARAHJAY M. ROSS,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:21-cv-02080** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **LT. FISS, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Pending before the Court is a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure by the remaining Defendants in the above-captioned action. (Doc. No. 14.)  For the reasons set forth below, the Court will deny the motion in its entirety.

## I.  BACKGROUND

### A.  Procedural Background

On December 13, 2021, pro se Plaintiff Tarahjay M. Ross ("Plaintiff"), who is currently incarcerated as a pretrial detainee at the Franklin County Jail ("FCJ") in Chambersburg, Pennsylvania, commenced the above-captioned action by filing a complaint pursuant to the provisions of 42 U.S.C. § 1983 ("Section 1983") against the following Defendants, all of whom were employed by the FCJ during the period of time relevant to Plaintiff's claims: Lieutenant Fiss ("Fiss"); Corrections Officers Heinbaugh ("Heinbaugh"), Thomas ("Thomas"), Donatto ("Donatto"), and Cox ("Cox"); and Property Clerk Yates ("Yates").  (Doc. No. 1.)  In addition to the complaint, Plaintiff also filed a motion for leave to proceed in forma pauperis (Doc. No. 2) and a motion to appoint counsel (Doc. No. 4).

On December 23, 2021, the Court granted Plaintiff's motion for leave to proceed in forma pauperis, denied his motion to appoint counsel without prejudice, and conducted an initial

review of the complaint pursuant to the Prison Litigation Reform Act of 1995 ("PLRA").[1]  (Doc. Nos. 7, 8.)  In accordance with that review, the Court partially dismissed the complaint for failure to state a claim upon which relief could be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  (Id.)  More specifically, the Court permitted Plaintiff to proceed on his Fourteenth Amendment excessive use of force claims against Defendants Fiss, Heinbaugh, and Thomas, as well as his First Amendment retaliation claims against Defendants Thomas and Donatto, but dismissed the remainder of Plaintiff's claims without prejudice.  (Id.)  The Court also afforded Plaintiff the opportunity to file an amended complaint within thirty (30) days.  (Id.)  The Court cautioned Plaintiff that, if he failed to file an amended complaint within the thirty (30) days, the Court would direct service of the original complaint upon Defendants Fiss, Heinbaugh, Thomas, and Donatto.  (Doc. No. 8 ¶ 10.)

Because Plaintiff never filed an amended complaint, the Court issued an Order on March 8, 2022, stating that this action would proceed on Plaintiff's Fourteenth Amendment excessive use of force claims against Defendants Fiss, Heinbaugh, and Thomas and on Plaintiff's First Amendment retaliation claims against Defendants Thomas and Donatto.  (Doc. No. 13.)  In addition, the Court, after receiving a suggestion of death for Defendant Heinbaugh, terminated Defendant Heinbaugh from this action.[2]  (Id.)

After waiving service (Doc. No. 12), Defendants filed a motion to dismiss the complaint and a brief in support thereof pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. Nos. 14, 15.)  On June 15, 2022, Plaintiff filed a brief in opposition.  (Doc. No. 16.)  As

[1]  See The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

[2]  Although the Court provided Plaintiff with the opportunity to show cause why termination of Defendant Heinbaugh should not occur (Doc. No. 13), Plaintiff did not show any cause.

reflected by the docket, Defendants did not file a reply brief, and the time period for doing so has passed.  Thus, Defendants' motion to dismiss the complaint is ripe for the Court's resolution.

**B.     Factual Background**[3]

In his complaint, Plaintiff alleges that on July 5, 2021, Defendant Fiss and Corrections Officer Baker, a non-party, took him out of his cell and cuffed him behind his back to go see the nurse.  (Doc. No. 1 at 5.)  Plaintiff alleges that the nurse asked him to step on the scale because he had submitted a sick call slip with concerns of being underweight.  (Id.)  Plaintiff alleges that, after he stepped off the scale, Defendant Fiss pulled him by his arm.  (Id.)  Plaintiff alleges that Defendant Fiss did this because he was cuffed.  (Id. (averring that Defendant Fiss also stated, "I already heard that you had it handed to you, talking about what happen[ed] to me back in Dauphin").)  In addition, Plaintiff alleges that, once he returned to his cell, Defendant Fiss had him place his hands through the slot in his cell door in order for the cuffs to be removed.  (Id.)  Plaintiff alleges that Defendant Fiss removed the left cuff first and "then acted as if [Plaintiff's] right hand wasn't out far enough[.]"  (Id.)  Plaintiff alleges that Defendant Fiss "started to yank [his] right arm/wrist all the way through the hole."  (Id.)  Plaintiff alleges that he submitted a grievance about this incident because he had bruises on his wrist.  (Id.)  Plaintiff alleges that a "Correctiona[l] Treatment Specialist" responded that efforts were made to improve professionalism and that Plaintiff should submit a sick call slip to address any medical concerns. (Id.)

Additionally, Plaintiff alleges that, on October 16, 2021, Defendant Thomas and Corrections Officer Woodward "darted up to the top tier due to Woodward saying he heard

---

[3]  The Court recites the factual background of this case as it pertains to Plaintiff's remaining claims and surviving Defendants.

something sliding across the floor." (<u>Id.</u> at 8.)  According to Plaintiff, prior to October 16, 2021, he had submitted a grievance about these officers refusing to turn on a television.  (<u>Id.</u>)  Specifically, Plaintiff alleges that, on October 3, 2021, Defendant Thomas refused to turn on the television, and Corrections Officer Woodward "stuck up his middle finger but did it as if he were pushing up his glasses." (<u>Id.</u>)

As for October 16, 2021, Plaintiff alleges that, after a "line/string" was found, Corrections Officer Woodward instructed Defendant Thomas to cuff Plaintiff.  (<u>Id.</u>)  Plaintiff responded that he had not done anything, but Corrections Officer Woodward told Plaintiff to cuff up or be sprayed with mace.  (<u>Id.</u> at 8-9.)  Plaintiff alleges that he unbuttoned his jumper from around his waist so that he could fully put on his jumper without exposing himself.  (<u>Id.</u> at 9.)  Plaintiff also alleges that, while the jumper was "on to [his] body[,]" he "felt wetness [on] the back of [his] head" and realized that he was being sprayed with oleoresin capsicum ("OC") spray.  (<u>Id.</u>)  Plaintiff asserts that he tried to wash his eyes out at his sink when he heard Lieutenant Pretrill, a non-party, ask him to cuff up.  (<u>Id.</u>)  Plaintiff claims that he refused, arguing that when he tried to cuff up the first time, he got sprayed for no reason.  (<u>Id.</u>)  Plaintiff alleges that he was subsequently cuffed and taken out of his cell with none of his buttons fastened.  (<u>Id.</u>)  Plaintiff also alleges that he appeared before a hearing officer on October 17, 2021.  (<u>Id.</u>)  Plaintiff claims that the hearing officer sanctioned him with thirty (30) days' disciplinary custody.  (<u>Id.</u>)  Plaintiff asserts that his appeal of the sanction was denied.  (<u>Id.</u>)

Additionally, Plaintiff alleges that, on October 27, 2021, Defendant Donatto turned off the televisions on, presumably, Plaintiff's cell block.  (<u>Id.</u> at 11.)  Plaintiff alleges that he asked other inmates to ask Defendant Donatto to turn them back on, but that Defendant Donatto refused because the jail was on lockdown.  (<u>Id.</u>)  According to Plaintiff, Defendant Donatto said,

"[l]et [Plaintiff] cry."  (Id.)  Plaintiff alleges that he responded by saying that he was not crying and that Defendant Donatto could not tell the other inmates no.  (Id.)  Plaintiff alleges that Defendant Donatto then said, "shut [up] you nappy head n*****."  (Id.)  Plaintiff alleges that he asked to see a lieutenant and was refused, so he began to kick his cell door in an unsuccessful attempt to have a lieutenant come talk to him.  (Id.)  Plaintiff alleges that Defendant Donatto then came to his cell and began kicking the door.  (Id.)  According to Plaintiff, Defendant Donatto "knew" that Plaintiff was writing a grievance about him, so Defendant Donatto decided to issue Plaintiff two (2) misconducts, "making false accusations" against him.  (Id.)  In particular, Plaintiff alleges that he was charged with threatening to "'F'. . . up" Defendant Donatto and with kicking his door to have others do the same.  (Id.)  Plaintiff also alleges that, later that day, Defendant Donatto walked by his cell and refused him dinner.  (Id.)  In connection with all of these allegations, Plaintiff asserts that he has suffered from lacerations, bruises, swollen joints, PTSD, mental abuse, trauma, and pain and suffering.  (Id. at 13.)

Based on the above factual allegations, Plaintiff claims violations of his rights under the First and Fourteenth Amendments to the United States Constitution.  (Id.)  As for relief, Plaintiff requests monetary damages.  (Id.)

## II.   LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure

12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P.

12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all

factual allegations in the complaint and all reasonable inferences that can be drawn from them,

viewed in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679

(2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  To prevent

dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims

are facially plausible.  See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203,

210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the

defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R.

Civ. P. 8(a)(2)).

Accordingly, the United States Court of Appeals for the Third Circuit has identified the

following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the

elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations

contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine

whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to

an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010)

(internal citations and quotation marks omitted).  The Third Circuit has specified that in ruling on

a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the

complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly

authentic documents if the complainant's claims are based upon these documents."  See Mayer v.

Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White

Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document

filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A

pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than

formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it

appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that

would entitle him to relief. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

## III.   DISCUSSION

### A.   Exhaustion of Available Administrative Remedies

Initially, Defendants argue that Plaintiff's claims should be dismissed because he failed

to exhaust available administrative remedies at the FCJ before he filed his complaint in this

Court. (Doc. No. 15 at 9-11.) In support, Defendants argue that the complaint "is entirely silent"

as to whether Plaintiff exhausted such remedies and "does not allege" that Plaintiff filed any

grievances or that he fully appealed those grievances through the FCJ's administrative remedy

process. (Id. at 11.) As a result, Defendants argue that Plaintiff's claims are "premature" and

should be dismissed. (Id.) The Court is unpersuaded by this argument.

While the PLRA's exhaustion requirement is mandatory, see Ross v. Blake, 578 U.S.

632, 638 (2016) (reiterating that the PLRA's "language is mandatory: An inmate shall bring no

action (or said more conversationally, may not bring any action) absent exhaustion of available

administrative remedies" (citation and internal quotation marks omitted)), a plaintiff's failure to

exhaust available administrative remedies is an affirmative defense. See Jones v. Bock, 549 U.S.

199, 216 (2007). Accordingly, "[t]he burden to plead and prove failure to exhaust as an

affirmative defense rests on the defendant." See Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018) (citation omitted).  In other words, "it is not a pleading requirement for the prisoner-plaintiff."  See Small v. Camden Cnty., 728 F.3d 265, 268-69 (3d Cir. 2013) (citations omitted)).

This is not to suggest that a prisoner-plaintiff's failure to exhaust available administrative remedies cannot ever form the basis for dismissal in connection with a defendant's motion to dismiss filed pursuant to Rule 12(b)(6).  Rather, dismissal on that ground is appropriate only where it is apparent from the allegations in the complaint that the prisoner-plaintiff has failed to exhaust such remedies.  See Jones, 549 U.S. at 215-216 (concluding that a prisoner's failure to exhaust available administrative remedies may form the basis for dismissal for failure to state a claim if "the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract" (citations omitted)); Thomas v. Brinich, 579 F. App'x 60, 62 (3d Cir. 2014) (unpublished) (explaining that, "[w]hile the failure to exhaust administrative remedies may form a basis for a dismissal for failure to state a claim, dismissal on that ground is appropriate only in those circumstances where the complaint reveals the exhaustion defense on its face" (citation omitted)).

Here, however, the Court finds that the allegations in the complaint do not establish that Plaintiff failed to exhaust his available administrative remedies at the FCJ before filing his complaint in this Court.  As acknowledged by Defendants, the complaint is "entirely silent" on this issue.  (Doc. No. 15 at 11.)  Thus, the Court finds that Plaintiff's failure to exhaust is not an appropriate ground for dismissal at this stage of the litigation.  As such, the Court will deny Defendants' motion to dismiss on this basis.

That being determined, the Court recognizes that the Prison Litigation Reform Act's exhaustion requirement commands that "'[n]o action shall be brought with respect to prison

conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'"  See Paladino v. Newsome, 885 F.3d 203, 207 (3d Cir. 2018) (quoting 42 U.S.C. § 1997e(a)) (alterations in original).  In other words, under that Act, exhaustion of available administrative remedies is a prerequisite for Plaintiff's assertion of Section 1983 claims against Defendants  See Ross, 578 U.S. at 638 (explaining that the PLRA's "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies") (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006))); Jones, 549 U.S. at 211 (stating that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court" (citation omitted)); Porter v. Nussle, 534 U.S. 516, 524 (2002) (stating that "[o]nce within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory  . . . [a]ll available remedies must now be exhausted . . . " (citation, internal citation, and internal quotation marks omitted) (alterations added)); Downey v. Pennsylvania Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020) (stating that the "stringent requirements" of the PLRA are designed to, among other things, "return[ ] control of the inmate grievance process to prison administrators, encourage[ ] the development of an administrative record, and perhaps settlements, within the inmate grievance process, and reduc[e] the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits" (citation and internal quotation marks omitted) (alterations added)).

Accordingly, because exhaustion of available administrative remedies is a prerequisite for Plaintiff's assertion of his Section 1983 claims in this action, and because Defendants are raising the affirmative defense that Plaintiff failed to exhaust his available administrative remedies at the FCJ, the Court will afford Defendants the opportunity to file a limited motion for

summary judgment on the threshold issue of whether they can meet their burden to establish Plaintiff's failure to exhaust.  See Rinaldi, 904 F.3d at 268 (stating that "[t]he burden to plead and prove failure to exhaust as an affirmative defense rests on the defendant" (citation omitted)).

**B.     Fourteenth Amendment Excessive Use of Force Claims**

In the complaint, Plaintiff asserts Fourteenth Amendment claims against Defendants Thomas and Fiss based upon their alleged use of excessive force.  (Doc. No. 1.)  A pretrial detainee's claim based upon the alleged use of excessive force arises under the Due Process Clause of the Fourteenth Amendment.  See Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015) (reiterating that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment" (citation and internal quotation marks omitted)).   Because "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically[,]'" see Kingsley, 576 U.S. at 400, "'a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable.'"  See Jacobs v. Cumberland Cnty., 8 F.4th 187, 194 (3d Cir. 2021) (emphasis in original) (quoting Kingsley, 576 U.S. at 396-97).

In considering whether the use of force was objectively unreasonable, "'[a] court (judge or jury) cannot apply this standard mechanically.'"  See id. (quoting Kingsley, 576 U.S. at 397).  Instead, courts are to assess a variety of factors when determining whether an officer used "objectively unreasonable force[:]"

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

See id. at 194-95 (quoting Kingsley, 576 U.S. at 397).  In addition, courts are to analyze the "circumstances from the perspective of a reasonable officer on the scene."  See id. at 195 (citation and internal quotation marks omitted); Kingsley, 576 U.S. at 399 (recognizing that "[r]unning a prison is an inordinately difficult undertaking, . . . and that safety and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face" (citation and internal citation and quotation marks omitted)).

### 1.   Defendant Thomas

Defendants argue that Plaintiff's Fourteenth Amendment excessive use of force claim against Defendant Thomas should be dismissed because Plaintiff has not shown his personal involvement in the alleged use of force and because the alleged use of force was justified and reasonable under the circumstances.  (Doc. No. 15 at 12-15.)  As set forth above, Plaintiff's excessive use of force claim against Defendant Thomas is based upon the incident that allegedly occurred on October 16, 2021.  (Doc. No. 1 at 8-9.)  More specifically, Plaintiff alleges that: Corrections Officer Woodward instructed Defendant Thomas to cuff Plaintiff (id. at 8); Plaintiff responded that he had not done anything (id.); Corrections Officer Woodward told Plaintiff to cuff up or be sprayed with mace (id. at 8-9); Plaintiff again responded that he had not done anything, but proceeded by unbuttoning his jumper from around his waist so that he could fully put on his jumper without exposing himself (id. at 9); and, once the jumper was "on to [his] body[,]" he "felt wetness [on] the back of [his] head" and realized that he was being sprayed with OC spray before he even had the chance to button up his jumper (id.).

Accepting Plaintiff's allegations as true, which the Court is required to do in connection with its resolution of a Rule 12(b)(6) motion to dismiss, the Court concludes that the complaint

alleges facts sufficient to state a Fourteenth Amendment excessive use of force claim against Defendant Thomas.  Liberally construed, the complaint alleges that, when Plaintiff was attempting to comply with the directive to cuff up, he was sprayed with OC spray.  As a result, the complaint plausibly alleges that the force used against Plaintiff was objectively unreasonable.  See Jacobs, 8 F.4th at 194.

That being said, the Court acknowledges Defendant Thomas's argument that the Kingsley factors support a finding that the force used against Plaintiff was not objectively unreasonable under the circumstances of this case.  (Doc. No. 15 at 12-15 (arguing that the complaint alleges that Plaintiff was given two (2) verbal commands before the OC spray was used on him).)  Although there may be situations in which application of the Kingsley factors can occur based upon the pleadings alone, the Court concludes that, in this matter, a developed factual record is necessary to determine whether Defendant Thomas's use of force was objectively unreasonable under the circumstances.  Most notably, the allegations in the complaint do not shed light on the fourth or fifth Kingsley factors—i.e., the severity of the security problem or the threat reasonably perceived by the officer.  Even though the complaint alleges that Defendant Thomas and Corrections Officer Woodward had gone to Plaintiff's cell after a "line/string" had been found (Doc. No. 1 at 8), the circumstances surrounding this "line/string" or the threat that it posed, or the threat that Plaintiff posed, have not been fully developed in the complaint.  As a result, the Court is unable to conduct an appropriate Kingsley analysis at this time.

The Court also acknowledges Defendants' argument that Defendant Thomas should be dismissed for lack of personal involvement in this Section 1983 action.  (Doc. No. 15 at 14.)  While it is true that the complaint does not specify which corrections officer deployed the OC

spray, the complaint alleges that Corrections Officer Woodward directed Defendant Thomas to cuff Plaintiff and that the OC spray was used on the <u>back</u> of Plaintiff's head.  (Doc. No. 1 at 8-9.) Thus, at this stage of the litigation, the Court finds that the complaint contains sufficient allegations to raise the plausible inference that Defendant Thomas was personally involved in the October 16, 2021 incident.  If discovery reveals that Defendant Thomas did not have any personal involvement in the use of OC spray, such evidence could be presented in connection with a motion for summary judgment.

Thus, for all of these reasons, the Court finds that the complaint plausibly states a Fourteenth Amendment excessive use of force claim against Defendant Thomas.  As such, the Court will deny Defendants' motion to dismiss on this basis.

### 2.    Defendant Fiss

Defendants argue that Plaintiff pleads only a <u>de minimis</u> injury with respect to his Fourteenth Amendment excessive use of force claim against Defendant Fiss.  (Doc. No. 15 at 15-17.)  In support, Defendants argue that Plaintiff claims only that he suffered bruises on his wrists as a result of the incident that allegedly occurred on July 5, 2021, when Defendant Fiss allegedly "'yank[ed]'" on Plaintiff's arm/wrist to remove Plaintiff's handcuffs.  (<u>Id.</u> at 16 (quoting Doc. No. 1 at 5).)  As a result, Defendants argue that Plaintiff is not entitled to damages from Defendant Fiss.  (<u>Id.</u> at 15-17.)  The Court is unpersuaded by this argument.

In order for the complaint to plausibly state a Fourteenth Amendment excessive use of force claim against Defendant Fiss, Plaintiff must "'show <u>only</u> that the force purposely or knowingly used against him was objectively unreasonable.'"  <u>See Jacobs</u>, 8 F.4th at 194 (quoting <u>Kingsley</u>, 576 U.S. at 396-97) (emphasis in original).  Thus, the critical inquiry is not the extent of Plaintiff's injury, but the nature of the force that was allegedly used against him.  <u>See</u>

generally Wilkins v. Gaddy, 559 U.S. 34, 37, 39 (2010) (explaining that the "core judicial inquiry" in an Eighth Amendment excessive use of force analysis is "not whether a certain quantum of injury was sustained," but rather the "nature of the force" applied (citation and internal quotation marks omitted)).  Plaintiff, in other words, is not required to show more than a de minimis injury in order to plausibly allege the excessive use of force under the Due Process Clause of the Fourteenth Amendment.

That being said, even if Plaintiff ultimately succeeds on a Fourteenth Amendment excessive use of force claim against Defendant Fiss, the modest nature of Plaintiff's alleged injuries (i.e., bruises on his wrists) will certainly impact the damages that he may recover.  The modest nature of his alleged injuries do not, however, act as a complete bar to all damages.  See, e.g., Allah v. Al-Hafeez, 226 F.3d 247, 251 (3d Cir. 2000) (explaining that "certain absolute constitutional rights may be vindicated by an award of nominal damages in the absence of any showing of injury warranting compensatory damages"); Salley v. PA Dep't of Corr., 181 F. App'x 258, 263 (3d Cir. 2006) (unpublished) (stating that "[n]ominal damages may also be awarded when the injury is merely de minimis").

In their instant motion to dismiss and supporting brief, Defendants have not attempted to distinguish between Plaintiff's recovery of compensatory damages or any other types of damages, such as nominal damages.  Instead, Defendants broadly argue that Plaintiff is not entitled to recover any damages based upon the de minimis nature of his alleged injury.  (Doc. No. 15 at 15-17.)   This argument is not supported by the case law to which Defendants cite.[4]  As a result, the Court will deny Defendants' motion to dismiss on this basis.

_____

[4]   The only precedential opinion that Defendants cite in this section of their brief is Mitchell v. Horn, 318 F.3d 523 (3d Cir. 2003).  (Doc. No. 15 at 15-17.)  Based upon this opinion, Defendants argue that Plaintiff cannot seek any damages with respect to his excessive use of

**B.      First Amendment Claims**

In the complaint, Plaintiff asserts First Amendment retaliation claims against Defendants Thomas and Donatto.  (Doc. No. 1.)  In order for a prisoner-plaintiff to plausibly state a First Amendment retaliation claim, he must allege three (3) elements.  First, he must allege that he was engaged in constitutionally protected conduct.  See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Second, he must allege "that he suffered some 'adverse action' at the hands of prison officials."  See id. (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).  This requirement is satisfied by showing that the action "was sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights."  See id. (quoting Allah, 229 F.3d at 225).  Third, he must allege that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  See id. at 333-34 (quoting Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  If a prisoner-plaintiff establishes a prima facie case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  See id. at 334.  If the prison officials can make this showing, it defeats the prisoner-plaintiff's retaliation claim.  See Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002).

---

force claim against Defendant Fiss "because [Plaintiff] has not alleged a less-than-significant-but-more-than-de minimis physical injury."  (Id. at 15-16 (quoting Mitchell, 318 F.3d at 533-36).)  The Court notes that the Mitchell Court held that the plaintiff failed to state a claim for physical injury because he had alleged only a "[l]oss of food, water, and sleep[,]" not any actual physical injuries.  See Mitchell, 318 F.3d at 534 (explaining, however, that physical injuries could result from not receiving food, water, and sleep for four (4) days and thus, plaintiff would be permitted the opportunity to amend).  The Mitchell Court also held that, under the PLRA, a plaintiff must show "a less-than-significant-but-more-than-de minimis physical injury as a predicate to allegations of emotional injury."  See id. at 536 (emphasis added) (footnote omitted).  The Mitchell court did not hold, however, that a de minimis physical injury, in and of itself, bars a plaintiff from recovering all damages.  Thus, Defendants' argument is unavailing.

### 1.  Defendant Thomas

Defendants contend that the complaint fails to plead a First Amendment retaliation claim against Defendant Thomas based upon the October 16, 2021 incident.  (Doc. No. 15 at 17-19.) In support, Defendants argue that the complaint fails to allege facts that would satisfy the third element of a retaliation claim—i.e., that Plaintiff's constitutionally protected conduct was a substantial or motivating factor in Defendant Thomas's decision to discipline him.  (Id.) Although Defendants acknowledge the complaint's allegations that, in early October 2021, Plaintiff submitted grievances against Defendant Thomas and Corrections Officer Woodward (id. at 18), Defendants argue that the complaint does not contain any allegations that Defendant Thomas was actually aware of those grievances (id. at 19).  As such, Defendants contend that Plaintiff's retaliation claim against Defendant Thomas necessarily fails.  (Id.)  The Court agrees.

Plaintiff's complaint is devoid of any factual allegations that Defendant Thomas had knowledge of Plaintiff engaging in protected activity (i.e., Plaintiff filing a grievance against Defendant Thomas) such that this protected activity could have been a substantial or motivating factor in Defendant Thomas's alleged retaliatory conduct (i.e., Defendant Thomas using OC spray against Plaintiff).  As a result, the Court finds that Plaintiff's complaint has not plausibly alleged causation, the third element of a retaliation claim, against Defendant Thomas.  See Mearin v. Vidonish, 450 F. App'x 100, 102-03 (3d Cir. 2011) (unpublished) (affirming district court's determination that the prisoner-plaintiff had failed to show that his constitutionally protected activity was a motivating factor in any of the defendants' decisions since defendants had no knowledge of the prisoner's constitutionally protected activity at the time he suffered the alleged adverse actions); Booth v. King, 228 F. App'x 167, 172 (3d Cir. 2007) (unpublished) (affirming district court's conclusion that the prison guards' alleged actions of searching the

prisoner's cell, confiscating his property, and approving disciplinary sanctions against him did not constitute retaliation where the prison guards had no knowledge of the grievances the prisoner had filed with prison administrators); Smart v. Cmty. Educ. Ctr., Inc., No. 16-cv-02099, 2017 WL 187148, at *6 (D.N.J. Jan. 17, 2017) (explaining that the prisoner-plaintiff's failure to allege that the prison officials "knew of any constitutionally protected activity when they took the allegedly adverse action" was fatal to the prisoner's retaliation claim (citations omitted)); see also Daniels v. Sch. Dist. of Philadelphia, 776 F.3d 181, 196 (3d Cir. 2015) (stating, in the employment context, that a plaintiff "cannot establish that there was a causal connection without some evidence that the individuals responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted" (citations omitted)).

Accordingly, the Court is persuaded by Defendants' argument that the complaint fails to allege facts sufficient to satisfy the third element of Plaintiff's retaliation claim against Defendant Thomas. Thus, the Court will grant Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim against Defendant Thomas.

### 2.    Defendant Donatto

Defendants argue that the complaint fails to state a First Amendment retaliation claim against Defendant Donatto based upon the incident that allegedly occurred on October 27, 2021. (Doc. No. 15 at 20-21.)  Similar to their arguments as to Defendant Thomas, Defendants argue that the complaint fails to allege facts that would satisfy the third element of a retaliation claim against Defendant Donatto—i.e., that Plaintiff's constitutionally protected conduct was a substantial or motivating factor in Defendant Donatto's decision to discipline him.  (Id.) However, the Court is unpersuaded by this argument.

In the complaint, Plaintiff alleges that, on October 27, 2021, after Defendant Donatto turned off the televisions, and following an exchange between Defendant Donatto and Plaintiff, Defendant Donatto said to Plaintiff, "shut [up] you nappy head n*****." (Doc. No. 1 at 11.) Plaintiff alleges that he asked to speak to a lieutenant but "was told no[,]" so he began to kick his cell door in an unsuccessful attempt to get a lieutenant's attention. (Id.)  Plaintiff alleges that Defendant Donatto came to his cell and began kicking the door. (Id.)  Plaintiff also alleges that Defendant Donatto "knew" that Plaintiff was writing a grievance about him, so Defendant Donatto decided to issue Plaintiff two (2) misconducts, "making false accusations" against him. (Id. (alleging that he was charged with threatening Defendant Donatto and with kicking his cell door to have others do the same).)

Having reviewed these allegations regarding Defendant Donatto, the Court finds that they are "unusually suggestive" of a retaliatory motive—i.e., that Defendant Donatto issued Plaintiff two (2) misconducts within what appears to be minutes or, at most, hours of discovering that Plaintiff was writing a grievance against him. See Krouse, 126 F.3d at 503; Watson, 834 F.3d at 422; Rink, 717 F. App'x at 134. As a result, the Court is not persuaded by Defendants' argument that the complaint fails to allege facts sufficient to satisfy the third element of the retaliation claim asserted against Defendant Donatto. Thus, the Court will deny Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim against Defendant Donatto.

### C.    Qualified Immunity

Finally, Defendants argue that they are entitled to qualified immunity. (Doc. No. 15 at 22-28.)  "The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Clark v. Coupe, 55 F.4th 167, 178 (3d Cir. 2022)

(citations omitted).  In determining whether officials are entitled to such qualified immunity, courts "engage in a two-part analysis: (1) whether the plaintiff sufficiently alleged a right had been violated, and (2) whether that right was clearly established when it was allegedly violated to the extent that it would have been clear to a reasonable person that his conduct was unlawful." See id. (citation and quotation marks omitted).

Under the first prong, courts "must define the right allegedly violated at the appropriate level of specificity."  See Peroza-Benitez v. Smith, 994 F.3d 157, 165 (3d Cir. 2021) (citation and internal quotation marks omitted).  This prong requires courts "to frame the right in light of the specific context of the case, not as a broad general proposition."  See id. (citations and quotation marks omitted).

Under the second prong, courts "must ask whether that right was clearly established at the time of its alleged violation, i.e., whether the right was sufficiently clear that a reasonable official would understand that what he is doing violates that right."  See id. (citations and internal quotation marks omitted).  This prong "is an "objective (albeit fact-specific) question, where [the defendants'] subjective beliefs . . . are irrelevant."  See id. (citations and internal quotation marks omitted).  In order to determine whether the right was clearly established at the time of its alleged violation, courts must first look "to factually analogous Supreme Court precedent, as well as binding opinions from [the Third Circuit Court of Appeals[.]"  See id. (citation omitted).  Courts must next "consider whether there is a robust consensus of cases of persuasive authority in the Courts of Appeals."  See id. (citations and internal quotation marks omitted).  Additionally, courts "may also take into account district court cases, from within the Third Circuit or elsewhere."  See id. at 165-66 (citations omitted).

In assessing such case law, courts "must keep in mind that [the Third Circuit] takes a broad view of what constitutes an established right of which a reasonable person would have known." See id. at 166.  In fact, "a right may be clearly established even without a precise factual correspondence between the case at issue and a previous case." See id. (citations and internal quotation marks omitted); Ashcroft, 563 U.S. at 741 (explaining that, even though "a case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question beyond debate" (citations omitted)).  Thus, "[a] public official does not get the benefit of 'one liability-free violation' simply because the circumstance of his case is not identical to that of a prior case."  See Peroza-Benitez, 994 F.3d at 165 (quoting Kopec v. Tate, 361 F.3d 772, 778 (3d Cir. 2004)).

In addition, the burden of establishing qualified immunity lies with the defendants.  See Reedy v. Evanson, 615 F.3d 197, 223 (3d Cir. 2010).  The defendants satisfy this burden "only if they can show that a reasonable person in their position at the relevant time could have believed, in light of clearly established law, that their conduct comported with recognized legal standards." See E. D. v. Sharkey, 928 F.3d 299, 306 (3d Cir. 2019) (citation omitted).  And, finally, although the issue of qualified immunity should be resolved "at the earliest possible stage" in the litigation, see Hunter v. Bryant, 502 U.S. 224, 227 (1991) (citations omitted), "qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint."  See Thomas v. Indep. Twp., 463 F.3d 285, 291 (3d Cir. 2006) (citation and internal quotation marks omitted).

Here, in addition to the various arguments set forth above, Defendants contend that Plaintiff's claims should be dismissed because Defendants are entitled to qualified immunity. (Doc. No. 15 at 22-28.)  The Court, having reviewed this contention, finds that Defendants have

not met their burden of establishing that they are entitled to qualified immunity.  Defendants, in asserting a qualified immunity defense in connection with their Rule 12(b)(6) motion to dismiss, must accept that Plaintiff is entitled to all reasonable inferences from the facts alleged in the complaint, not only those that support his claims, but also those that overcome a qualified immunity defense.  Ultimately, the Court finds that the facts alleged in the complaint do not support a qualified immunity defense for Defendants.

Regarding the Fourteenth Amendment excessive use of force claim asserted against Defendant Thomas, Defendants' argument rests on the conclusion that Plaintiff was, in fact, non-compliant during the incident that allegedly occurred on October 16, 2021.  (Doc. No. 15 at 25-26.)  However, the Court has already determined that the complaint contains allegations supporting a plausible inference that Plaintiff was attempting to comply with the directive to cuff up by pulling up his jump suit from around his waist and buttoning it so that he was not fully exposed.  Thus, the allegations of the complaint, accepted as true and viewed in the light most favorable to Plaintiff, assert that Defendant Thomas used OC spray on Plaintiff while Plaintiff was attempting to comply with the directive to cuff up.  Accordingly, the Court finds that the determination of whether Defendant Thomas is entitled to qualified immunity on Plaintiff's Fourteenth Amendment excessive use of force claim is not properly before the Court because Defendants' argument relies upon a version of the facts that do not appear on the face of the complaint.  See, e.g., Johns v. City of Eugene, No. 16-cv-00907, 2017 WL 663092, at *6 (D. Or. Feb. 15, 2017) (explaining that "Defendants' reliance on a disputed version of events . . . drains the persuasive force out of their [qualified immunity] argument"); Via v. City of Fairfield, 833 F. Supp. 2d 1189, 1195 (E.D. Cal. 2011) (stating that, "[o]n a motion to dismiss . . . assessing qualified immunity is difficult if an officer's claim to qualified immunity depends on a version of

the facts that differs from the allegations in the complaint because the court must take the allegations in the complaint as true" (citations omitted)); <u>McGregory v. City of Jackson, Miss.</u>, 504 F. Supp. 2d 143, 146 (S.D. Miss. 2007) (declining to dismiss plaintiff's federal claims on the basis of qualified immunity where defendants argued, in connection with their Rule 12(b)(6) motion to dismiss, that they were entitled to immunity "based on their own version of the facts" and not "based on the facts <u>as alleged by plaintiff in his complaint</u>" (emphasis in original)).

With regard to the First Amendment retaliation claim asserted against Defendant Donatto, the Court finds that Defendants' arguments suffer from the same flaws discussed above. Although Defendants contend that the factual allegations of the complaint show that Plaintiff engaged in conduct on October 27, 2021, that would warrant Defendant Donatto issuing Plaintiff two (2) misconducts (Doc. No. 15 at 27-28), the Court disagrees. Indeed, the Court has already determined that the complaint contains allegations supporting a plausible inference that Plaintiff was retaliated against (<u>i.e.</u>, issued two misconducts by Defendant Donatto) for engaging in constitutionally protected activity (<u>i.e.</u>, writing a grievance against Defendant Donatto). In other words, the allegations of the complaint, accepted as true and viewed in the light most favorable to Plaintiff, do not raise the inference that Plaintiff was engaged in conduct warranting the issuance of the misconducts. Thus, the Court finds that the determination as to whether Defendant Donatto is entitled to qualified immunity on Plaintiff's First Amendment retaliation claim is not properly before the Court because Defendants' argument is based upon a version of the facts that do not appear on the face of the complaint. <u>See, e.g.</u>, <u>Johns</u>, 2017 WL 663092, at *6; <u>Via</u>, 833 F. Supp. 2d at 1195; <u>McGregory</u>, 504 F. Supp. 2d at 146.

Finally, regarding the Fourteenth Amendment excessive use of force claim against Defendant Fiss, Defendants argue in one sentence and without pointing to any allegations in the

complaint or any governing case law, that Defendant Fiss is entitled to qualified immunity "because [Defendant Fiss] would not have been on notice that the alleged force violated Plaintiff's constitutional rights as the force in question was rather minimal as evidenced by Plaintiff's temporary and de minimis injuries." (Doc. No. 15 at 28.)  As stated above, however, the burden of establishing qualified immunity rests with the Defendants.  See Reedy, 615 F.3d at 223.  And, here, Defendants' one-sentence argument does not satisfy their burden.  Moreover, and as already discussed above, the critical inquiry when a prisoner alleges that prison officials used excessive force against him is not the extent of injury, but the nature of the force allegedly used.  See Wilkins, 559 U.S. at 38-39.  Defendants have not only failed to fully develop their qualified immunity defense as to Defendant Fiss, but they have also failed to address this precedent.

Thus, for all of these reasons, the Court finds that Defendants have failed to meet their burden to show that Defendants are entitled to qualified immunity.  As a result, the Court will deny their motion to dismiss on this basis.  Defendants will, of course, be permitted to reassert this defense in connection with a motion for summary judgment.

## IV.    CONCLUSION

Accordingly, for all of the foregoing reasons, the Court will deny Defendants' motion to dismiss.  An appropriate Order follows.