## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TARAHJAY M. ROSS,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:21-cv-02080** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **LT. FISS, <u>et</u> <u>al.</u>,** | : | |
| **Defendants** | : | |

### <u>MEMORANDUM</u>

Before the Court for resolution is the issue of whether the remaining Defendants have

met their burden to establish the affirmative defense of Plaintiff's failure to exhaust

administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA") before

commencing this suit in federal court. For the reasons set forth below, the Court finds that

Defendants have met their burden to establish this affirmative defense. As a result, the Court

will grant their pending motion for summary judgment. (Doc. No. 21.)

## I.   BACKGROUND[1]

Plaintiff Tarahjay M. Ross ("Plaintiff"), who is proceeding pro se and <u>in</u> <u>forma</u> <u>pauperis</u>,

is a state prisoner in the custody of the Pennsylvania Department of Corrections. He is currently

incarcerated at State Correctional Institution Waymart in Waymart, Pennsylvania. (Doc. No.

26.) On December 13, 2021, while he was incarcerated as a pretrial detainee at the Franklin

County Jail ("FCJ") in Chambersburg, Pennsylvania, he commenced the above-captioned action

by filing a complaint pursuant to the provisions of 42 U.S.C. § 1983 ("Section 1983"), naming as

Defendants numerous individuals who worked at FCJ. (Doc. No. 1.) However, following,

---

[1] The Court recites the background of this case as it pertains to Plaintiff's remaining Defendants and surviving claims. A more thorough recitation of the background is set forth in the Court's March 31, 2023 Memorandum. (Doc. No. 19.)

approximately, two (2) years of litigation, the only remaining Defendants in this action are Lieutenant Fiss and Corrections Officers Donatto and Thomas (collectively, "Defendants"). (Doc. No. 20 at 1, ¶ 1(c).)  In addition, the only surviving claims are a First Amendment retaliation claim against Defendant Donatto and Fourteenth Amendment excessive use of force claims against Defendants Fiss and Thomas.  (Id.)

As for Plaintiff's First Amendment retaliation claim against Defendant Donatto, Plaintiff's complaint alleges that, on October 27, 2021, Defendant Donatto issued Plaintiff two (2) misconducts because Plaintiff was writing a grievance about him.  (Doc. No. 1 at 11.)  As for Plaintiff's Fourteenth Amendment excessive use of force claims against Defendants Fiss and Thomas, Plaintiff's complaint alleges that: on July 5, 2021, while Plaintiff was handcuffed, Defendant Fiss pulled him by his arm and yanked on his "right arm/wrist" (id. at 5); and on October 16, 2021, Defendant Thomas used OC spray on Plaintiff while Plaintiff was attempting to comply with a directive to "cuff up" (id. at 8–9).  In connection with these surviving claims, Plaintiff asserts that he has suffered lacerations, bruises, swollen joints, PTSD, mental abuse, trauma, and pain and suffering, for which he seeks monetary damages.  (Id. at 13.)

Particularly relevant here, on March 31, 2023, the Court issued a Memorandum and Order concluding that dismissal of Plaintiff's complaint was not appropriate on the basis that he, allegedly, failed to exhaust available administrative remedies at FCJ before asserting his Section 1983 claims against Defendants.  (Doc. No. 19 at 7–10.)  In reaching this conclusion, the Court explained that the burden to plead and prove Plaintiff's failure to exhaust, as an affirmative defense, rests with Defendants, not Plaintiff.  (Id. at 7–8.)  The Court further explained that this was not to suggest that a prisoner-plaintiff's failure to exhaust available administrative remedies could never form the basis for dismissal in connection with a defendant's motion to dismiss filed

pursuant to Rule 12(b)(6), but, rather, that dismissal on such grounds is appropriate only where it is apparent from the allegations in the complaint that the prisoner-plaintiff failed to exhaust administrative remedies.  (Id. at 8.)  And, in this case, the Court could not find that the allegations in Plaintiff's complaint affirmatively established that he failed to exhaust his available administrative remedies.  (Id.)

However, the Court recognized that exhaustion of available administrative remedies is a prerequisite for Plaintiff's assertion of his Section 1983 claims against Defendants.  (Id. at 9.) The Court also recognized that Defendants were asserting the affirmative defense of Plaintiff's failure to exhaust his available administrative remedies.  (Id.)  As a result, the Court granted Defendants the opportunity to file a limited motion for summary judgment on the threshold issue of whether they could meet their burden to establish Plaintiff's failure to exhaust.  (Id. at 9–10.) In doing so, the Court explicitly informed Plaintiff that, if Defendants filed such a motion for summary judgment, he would—of course—be permitted to file a response in accordance with the Federal Rules of Civil Procedure and the Local Rules of Court.  (Doc. No. 20 at 1 ¶ 2.)

In accordance with the Court's March 31, 2023 Memorandum and Order, Defendants filed a motion for summary judgment on April 28, 2023, along with a statement of material facts, supporting brief, and various exhibits.  (Doc. Nos. 21–23.)  As reflected by the Court's docket, Plaintiff has neither filed a response to their motion, nor sought an extension of time in which to do so.[2]  As a result, Plaintiff is deemed not to oppose Defendants' motion for summary judgment.  See M.D. Pa. L.R. 7.6 (explaining that a party has twenty-one (21) days after service

---

[2]  Notably, on October 31, 2023, Plaintiff filed a letter with the Court, inquiring about the status of this case.  (Doc. No. 27.)  As a result of Plaintiff's inquiry, the Clerk's Office sent Plaintiff a copy of the docket sheet.  See (id.).  Despite having sent Plaintiff a copy of the docket sheet, reflecting Defendants' pending motion for summary judgment, Plaintiff has not filed anything with the Court or sought an extension of time in which to do so.

of a movant's brief in support of a motion for summary judgment to file a brief in opposition and

a responsive statement and that the party's failure to comply with Local Rule 7.6 permits the

Court to deem the party not to oppose the movant's motion for summary judgment).

Accordingly, Defendants' pending motion for summary judgment is ripe for the Court's

resolution.

## II.   LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a).  "A

disputed fact is 'material' if it would affect the outcome of the suit as determined by the

substantive law." Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992) (quoting

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  And, a disputed material fact is

"genuine . . . [i]f the evidence is such that a reasonable jury could return a verdict for the

nonmoving party[.]"  See Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.,

927 F.2d 1283, 1287–88 (3d Cir. 1991) (citing Anderson, 477 U.S. at 248).

A party moving for summary judgment has the initial burden "of informing the district

court of the basis for its motion, and identifying those portions of [the record], which it believes

demonstrate the absence of a genuine issue of material fact."  See Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986).  The moving party's burden "may be discharged by 'showing'—that is,

pointing out to the district court—that there is an absence of evidence to support the nonmoving

party's case."  See id. at 325.

Once the moving party has met its initial burden, the burden shifts to the nonmoving

party, who may not rest upon the unsubstantiated allegations or denials of its pleadings and,

instead, must go beyond its pleadings, "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" to show a genuine dispute of material fact.  See Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 324.  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial[,]" summary judgment is proper.  See id. at 322.  Summary judgment is also proper if the nonmoving party provides evidence that is "merely colorable" or that "is not significantly probative[.]"  See Gray, 957 F.2d at 1078.

In addition, when deciding a motion for summary judgment, "the court must view all evidence and draw all inferences in the light most favorable to the non-moving party[.]"  See Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008) (citing Davis v. Mountaire Farms, Inc., 453 F.3d 554, 556 (3d Cir. 2006)); M.S. by & through Hall v. Susquehanna Twp. Sch. Dist., 969 F.3d 120, 125 (3d Cir. 2020) (stating that, when reviewing a motion for summary judgment, courts are to "view the evidence in the light most favorable to the non-moving party").

## III.    DISCUSSION

### A.    The PLRA's Exhaustion Requirement

The PLRA's exhaustion requirement mandates that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  See 42 U.S.C. § 1997e(a) (emphasis added).  In other words, exhaustion of available administrative remedies is a prerequisite for a prisoner asserting a claim under Section 1983 regarding his prison conditions.  See Ross v. Blake, 578 U.S. 632, 638

(2016) (reiterating that the PLRA's "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies" (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)); Jones v. Bock, 549 U.S. 199, 211 (2007) (stating that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court" (citation omitted) (alteration added)); Booth v. Churner, 532 U.S. 731, 733–34 (2001) (stating that the PLRA "now requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions" (quoting 42 U.S.C. § 1997e(a))).

"The PLRA requires proper exhaustion, meaning 'complet[ing] the administrative review process in accordance with the applicable procedural rules.'" Downey v. Pennsylvania Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020) (quoting Woodford, 548 U.S. at 88). And the applicable "procedural rules are supplied by the individual prisons." See id. (citations omitted); Spruill v. Gillis, 372 F.3d 218, 222 (3d Cir. 2004) (stating that "the determination [of] whether a prisoner has 'properly' exhausted a claim . . . is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances . . ."); see also Jones, 549 U.S. at 218 (explaining that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim . . . "); Woodford, 548 U.S. at 90 (stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ").

A prisoner's failure to follow these procedural rules will result in a procedural default of his claims. See id. at 230–32 (concluding that the PLRA's exhaustion requirement includes a procedural default component); Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010) (recognizing this holding in Spruill). A procedural default may be excused, however, if the

prisoner can show that the administrative remedies were unavailable to him.  See Rinaldi v. United States, 904 F.3d 257, 266 (3d Cir. 2018) (stating that "[t]he PLRA requires only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are 'available'" (quoting Woodford, 548 U.S. at 93)).  "An administrative remedy is unavailable when it 'operates as a simple dead end[,] . . . is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" Downey, 968 F.3d at 305 (quoting Shifflett v. Korszniak, 934 F.3d 356, 365 (3d Cir. 2019)).

The failure to exhaust available administrative remedies is an affirmative defense.  See Jones, 549 U.S. at 216.  Accordingly, "[t]he burden to plead and prove failure to exhaust as an affirmative defense rests on the defendant."  See Rinaldi, 904 F.3d at 268 (citing Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002)).  However, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him."  See id. (citation omitted).

Finally, requiring a prisoner to exhaust available administrative remedies before filing suit in federal court advances the policy justifications of the PLRA—to "return[ ] control of the inmate grievance process to prison administrators, encourage[ ] the development of an administrative record, and perhaps settlements, within the inmate grievance process, and reduc[e] the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits."  See Downey, 968 F.3d at 305 (citation and internal quotation marks omitted) (alterations added)); Jones, 549 U.S. at 204 (explaining that the exhaustion requirement "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court").

**B.      Defendants' Motion for Summary Judgment**

As discussed above, the only surviving claims in this Section 1983 action are Plaintiff's

First Amendment retaliation claim against Defendant Donatto (i.e., the October 27, 2021

incident) and Plaintiff's Fourteenth Amendment excessive use of force claims against

Defendants Fiss and Thomas (i.e., the July 5, 2021 incident and the October 16, 2021 incident,

respectively).   In their pending motion for summary judgment, Defendants argue that Plaintiff

failed to exhaust available administrative remedies before asserting these claims against them in

federal court.  (Doc. No. 21.)  Based upon Plaintiff's alleged failure to exhaust, Defendants

contend that summary judgment should be entered in their favor.  (Id.)

In accordance with the Court's Local Rules, Defendants filed a statement of material

facts and various exhibits in support of their motion for summary judgment.  (Doc. Nos. 21-3,

22.)  Plaintiff, however, did not file his own statement of material facts, responding to the

numbered paragraphs set forth in Defendants' statement.  Thus, under the Court's Local Rules,

Defendants' facts are deemed admitted since:

> A failure to file a counter-statement equates to an admission of all the facts set forth
> in the movant's statement. This Local Rule serves several purposes. First, it is
> designed to aid the Court in its determination of whether any genuine issue of
> material fact is in dispute. Second, it affixes the burden imposed by Federal Rule
> of Civil Procedure 56(e), as recognized in Celotex Corp. v. Catrett, on the
> nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the
> depositions, answers to interrogatories, and admissions on file, designated specific
> facts showing that there is a genuine issue for trial.' [Celotex Corp. v. Catrett, 477
> U.S. 317, 324] (1986) (internal quotations omitted) (emphasis added).

See Williams v. Gavins, No. 13-cv-0387, 2015 WL 65080, at *5 (M.D. Pa. Jan. 5, 2015) aff'd

sub nom. Williams v. Gavin, 640 F. App'x 152 (3d Cir. 2016) (unpublished) (emphasis in

original) (citation omitted).  Thus, the material facts in this Memorandum are derived from

Defendants' statement of material facts. That said, the Court has conducted a thorough and impartial review of the record in this matter.

### 1.  Statement of Material Facts

Plaintiff was a pretrial detainee at FCJ (Doc. No. 22 ¶ 1), and Defendants were employed by FCJ (id. ¶ 2), at all times relevant to Plaintiff's complaint.

### a.  FCJ's Grievance Policy

Under FCJ's grievance policy, an inmate shall submit a grievance electronically on a tablet, which begins the administrative remedy process. (Id. ¶ 28.) Inmates who are on certain segregated statuses may submit a paper grievance by completing FCJ Form 300.05-1 Inmate Grievance Form. (Id.) The inmate will then place the paper form in the appropriate box on the unit. (Id.) If an inmate is on an Administrative Segregation Status, staff will place the paper form in the appropriate box for the inmate. (Id.) Generally speaking, paper forms should be placed in the unit mailbox for proper delivery. (Id. ¶ 31.) Hand-delivered paper forms from staff and inmates will not be accepted. (Id.)

With respect to the contents of the grievance, the inmate should clearly state the problem and include pertinent information, such as, dates, times, names, places, references to the Inmate Handbook, and other information which would help to fully explain the problem. (Id. ¶ 29.) The inmate should also specify on the form what specific relief or remedy he expects to receive. (Id. ¶ 30.)

All grievances will be forwarded to the appropriate treatment staff for review. (Id. ¶ 32.) Thereafter, the staff member will initial the form and place the time and date on the form. (Id. ¶ 33.) The staff member will then attempt to resolve the grievance. (Id. ¶ 34.) The staff member's resolution/response will be noted on the form, and the form will ordinarily be returned

to the inmate with ten (10) business days.  (Id.)  The staff member's solution/response is not required to be returned to the inmate within ten (10) business days.  (Id.; Doc. No. 21-3 at 3, ¶ 12 (containing Deputy Warden Weller's affidavit wherein she explains that returning the solution/response to the inmate within ten (10) business days "is an aspirational goal that staff should strive to meet if possible").)

After an inmate receives the initial response to their grievance, and if the inmate is not satisfied with the decision that was made, the inmate is responsible for appealing the decision using the grievance form.  (Id. ¶ 36.)  The inmate has five (5) business days to appeal the initial response.  (Id.)  The grievance form, "if resubmitted[,]" will be sent to the Deputy Wardens or their designee.  (Id. ¶ 37.)  The Deputy Wardens or their designee will ordinarily respond to the inmate's appeal within ten (10) business days.  (Id.)  If the inmate is dissatisfied with the response to his first appeal, the inmate has five (5) business days to appeal that response.  (Id. ¶ 38.)  Appeals at the next level will be referred to the Warden or his/her designee.  (Id. ¶ 39.)  At this step, an inmate's grievance may be denied, granted, or deferred for a formal hearing.  (Id.)  All decisions at this stage are final.  (Id.)

### b.    The July 5, 2021 Incident

On July 7, 2021, FCJ received a grievance (i.e., grievance 21-00404) from Plaintiff regarding a matter that allegedly occurred on July 5, 2021.  (Id. ¶ 3.)  In that grievance, Plaintiff alleged that Defendant Fiss pulled his arm while he was handcuffed and roughly removed his handcuffs.  See (id. ¶ 4).  On July 21, 2021, Director Sterner, the Director of Inmate Management, responded to Plaintiff's grievance by stating: "Efforts are made to improve professionalism.  Submit a sick call slip to address any medical concerns."  (Id. ¶ 5.)  Plaintiff neither filed an appeal of Director Sterner's response, nor submitted a sick call slip.  (Id. ¶ 6.)

10

### c.      The October 16, 2021 Incident

On October 16, 2021, Plaintiff was issued a misconduct report.  (<u>Id.</u> ¶ 7.)  On October 17, 2021, a disciplinary hearing was conducted by Hearing Officer Shindledecker, and Plaintiff was found guilty of disobeying a direct lawful order, resisting/interfering with staff duties, and possessing, passing, receiving contraband.  (<u>Id.</u> ¶ 8.)  Plaintiff had twenty-four (24) hours to appeal this misconduct finding to the Warden.  (<u>Id.</u>)  On October 18, 2021, Plaintiff filed an appeal.  (<u>Id.</u> ¶ 12.)  And, on October 19, 2021, Deputy Warden Jeffrey Scott denied Plaintiff's appeal, finding that "the disciplinary procedures" were "followed[,] and the charges were supported by appropriate evidence."  (<u>Id.</u>)

In addition, on October 18, 2021, FCJ received a grievance from Plaintiff (grievance 21-00700) wherein Plaintiff claims that, while he was trying to comply with the directive to "cuff up[,]" Defendant Thomas sprayed him with OC spray.  (<u>Id.</u> ¶ 9.)  On November 3, 2021, Director Sterner responded to Plaintiff's grievance by stating: "Misconducts should be addressed at your misconduct hearing and/or the misconduct hearing appeals process.  Officers are permitted use of the OC spray according to the force continuum."  (<u>Id.</u> ¶ 10.)  Plaintiff did not appeal Director Sterner's response.  (<u>Id.</u> ¶ 11.)

### d.      The October 27, 2021 Incident

On October 27, 2021, Plaintiff was issued two (2) misconduct reports: the first was issued at 14:35-14:45 hours (<u>id.</u> ¶ 13); and the second was issued at 15:49 hours (<u>id.</u> ¶ 17).  On October 28, 2021, disciplinary hearings that were scheduled for that date were rescheduled for November 8, 2021, in order to allow for further investigation.  (<u>Id.</u> ¶¶ 14, 18.)  And, on November 8, 2021, the disciplinary hearings were conducted by Hearing Officer Affleck.  (<u>Id.</u> ¶¶ 15, 19.)  As for the misconduct report that was issued at 14:35-14:45 hours, Plaintiff was found guilty of disobeying

a direct lawful order.  (Id. ¶ 15.)  And, as for the misconduct report that was issued at 15:49

hours, Plaintiff was found guilty of disobeying a direct lawful order and insolence/disrespectful

to staff/visitor.  (Id. ¶ 19.)  Plaintiff had twenty-four (24) hours to appeal these misconduct

findings to the Warden.  (Id. ¶¶ 15, 19.)  Plaintiff did not appeal either misconduct finding by

Hearing Officer Affleck.  (Id. ¶¶ 16, 20.)

On October 29, 2021, FCJ received two (2) grievances from Plaintiff (grievances 21-

00746 and 21-00748).  (Id. ¶ 21.)  These grievances concern various incidents that allegedly

occurred on October 27, 2021.  (Doc. No. 21-3 at 34, 36–37.)  On November 15, 2021, Director

Sterner responded to grievance 21-00746 by explaining: "Procedures are in place to inventory

and document your property[;] however, you assume risk of lost/damaged items when you

receive discipline which requires special moves and accommodations."  (Doc. No. 22 at ¶ 22.)

Plaintiff did not appeal Director Sterner's response to 21-00746.  (Id. ¶ 23.)  In addition, on

November 15, 2021, Director Sterner responded to grievance 21-00748 by stating: "Situation

investigated."  (Id. ¶ 24.)  Plaintiff did not appeal Director Sterner's response to grievance 21-

00748.  (Id. ¶ 25.)

## C.  **Plaintiff's Failure to Comply with the PLRA's Exhaustion Requirement**

### 1.  **The July 5, 2021 Incident**

The record reveals that FCJ received a grievance (grievance 12-00404) from Plaintiff on

July 7, 2021, concerning the July 5, 2021 incident, and that Director Sterner responded to that

grievance on July 21, 2021.  (Doc. Nos. 22 at ¶¶ 3, 5; 21-3 at 16–17.)  The record further reveals

that Plaintiff never appealed Director Sterner's response.  (Doc. No. 22 at ¶ 6.)  According to

FCJ's grievance policy, however, Plaintiff was required to file a response within five (5)

business days.  (Id. ¶ 36; Doc. No. 21-3 at 13.)  Thus, because Plaintiff failed to appeal Director

Sterner's response within five (5) business days, he did not comply with FCJ's grievance policy.

As a result, the Court concludes that Plaintiff failed to properly exhaust available

administrative remedies with regard to his Fourteenth Amendment excessive use of force claim

against Defendant Fiss concerning the July 5, 2021 incident.  See Downey, 968 F.3d at 305

(explaining that "[t]he PLRA requires proper exhaustion, meaning 'complet[ing] the

administrative review process in accordance with the applicable procedural rules'" (quoting

Woodford, 548 U.S. at 88); Spruill, 372 F.3d at 222 (stating that "the determination [of] whether

a prisoner has 'properly' exhausted a claim . . . is made by evaluating the prisoner's compliance

with the prison's administrative regulations governing inmate grievances . . .").

## 2.    The October 16, 2021 Incident

With respect to the October 16, 2021 incident, the record shows that, following Plaintiff's

disciplinary hearing on October 17, 2021, Plaintiff had twenty-four (24) hours to appeal Hearing

Officer Shindledecker's finding of guilty.  (Doc. Nos. 22 at ¶ 8; 21-3 at 20.)   Plaintiff filed an

appeal that same day.  (Doc. No. 22 at ¶ 12.)  Ultimately, Plaintiff's appeal was denied by

Deputy Warden Jeffery Scott on October 19, 2021.  (Id.; Doc. No. 21-3 at 24–25.)

Additionally, the record shows that FCJ received a grievance (grievance 21-00700)  from

Plaintiff on October 18, 2021, concerning the October 16, 2021 incident (Doc. Nos. 22 ¶ 9; 21-3

at 21–22), and that Director Sterner responded to that grievance on November 3, 2021  (Doc.

Nos. 22 at ¶ 10; 21-3 at 23).  Plaintiff never appealed Director Sterner's response.  (Doc. No. 22

at ¶ 11.)  As discussed above, however, Plaintiff was required to file an appeal within five (5)

business days.  (Id. ¶ 36; Doc. No. 21-3 at 13.)  Thus, because Plaintiff failed to appeal Director

Sterner's response within five (5) business days, he did not comply with FCJ's grievance policy.

As a result, the Court concludes that Plaintiff failed to properly exhaust administrative remedies as it relates to his Fourteenth Amendment excessive use of force claim against Defendant Thomas concerning the October 16, 2021 incident.  See Downey, 968 F.3d at 305; Spruill, 372 F.3d at 222.[3]

### 3.    The October 27, 2021 Incident

Regarding the October 27, 2021 incident, the record demonstrates that, following Plaintiff's disciplinary hearings on November 8, 2021, Plaintiff had twenty-four (24) hours to appeal Hearing Officer Affleck's misconduct findings.  (Doc. No. 22 at ¶¶ 15, 19.)  Plaintiff, however, never appealed these finding.  (Id. ¶¶ 16, 20.)

Additionally, the record demonstrates that, on October 29, 2021, FCJ received two (2) grievances from Plaintiff (grievance numbers 21-00746 and 21-00748), both of which concerned various incidents that allegedly occurred on October 27, 2021.  (Id. ¶ 21; Doc. No. 21-3 at 34, 36–37.)  Although Director Sterner responded to grievance number 21-00746 on November 15, 2021 (Doc. Nos. 22 ¶ 22; 21-3 at 35), Plaintiff never appealed Director Sterner's response (Doc. No. 22 at ¶ 23).  Similarly, although Director Sterner responded to grievance number 21-00748

---

[3] Defendants' statement of material facts include averments concerning Plaintiff's misconduct proceedings.  (Doc. No. 22.)  However, such averments have no bearing on Plaintiff's surviving Section 1983 claims, apart from providing context for the Court and the parties.  For instance, the only misconduct finding that Plaintiff appealed was the October 17, 2021 finding by Hearing Officer Shindledecker.  (Doc. No. 21-3 at 24.)  However, Plaintiff's Section 1983 claim regarding the October 16, 2021 incident concerns Defendant Thomas's alleged use of excessive force, not any misconduct charges or proceedings that followed that alleged use of excessive force.  (Doc. No. 1 at 8–9 (containing Plaintiff's complaint).)  And, in this regard, the Court notes that FCJ's grievance policy specifies that "[a]n alleged violation of civil or constitutional rights" are "[g]rievable [m]atters[,]" whereas "[d]isciplinary hearing decisions" are not.  (Doc. No. 21-3 at 10–11.)  In other words, according to FCJ's grievance policy, Plaintiff was required to grieve his Fourteenth Amendment excessive use of force claim against Defendant Thomas.  It was not enough, under that policy, that Plaintiff filed an appeal from the misconduct proceedings.

on November 15, 2021 (id. ¶ 24; Doc. No. 21-3 at 38), Plaintiff never appealed Director

Sterner's response (Doc. No. 22 ¶ 25).  As discussed above, however, Plaintiff was required to

appeal Director Sterner's responses within five (5) business days pursuant to FCJ's grievance

policy.  (Id. ¶ 36; Doc. No. 21-3 at 13.)  Because Plaintiff did not do so, the Court concludes that

he failed to properly exhaust administrative remedies as it relates to his First Amendment

retaliation claim against Defendant Donatto concerning the October 27, 2021 incident.  See

Downey, 968 F.3d at 305; Spruill, 372 F.3d at 222.

### 4. Conclusions as to Plaintiff's Failure to Comply with the PLRA's Exhaustion Requirement

Based upon this record, the Court concludes that Defendants have met their initial

summary judgment burden of identifying the portions of the record that they believe demonstrate

that Plaintiff failed to exhaust available administrative remedies at FCJ before asserting his

Section 1983 claims against them.  See Celotex, 477 U.S. at 323.  Because the Court concludes

that Defendants have met their initial burden, the burden shifts to Plaintiff who must cite to

particular parts of materials in the record to show that there is a genuine dispute of material fact

concerning the availability of administrative remedies at FCJ.  See Fed. R. Civ. P. 56(c); Celotex

Corp., 477 U.S. at 324; see also Rinaldi, 904 F.3d at 268 (explaining that "once the defendant

has established that the inmate failed to resort to administrative remedies, the onus falls on the

inmate to show that such remedies were unavailable to him" (citation omitted)).  Plaintiff,

however, has not responded to Defendants' motion for summary judgment, much less created a

genuine dispute of material fact.  As such, the Court concludes that Plaintiff has failed to satisfy

his summary judgment burden.[4]

---

[4]  As noted supra, on October 31, 2023, Plaintiff filed a letter with the Court, inquiring about the
status of this case.  (Doc. No. 27.)  As a result of Plaintiff's inquiry, the Clerk's Office sent

Thus, the Court will grant Defendants' motion for summary based upon Plaintiff's failure to exhaust available administrative remedies at FCJ before asserting his Section 1983 claims in this action.  See Downey, 968 F.3d at 305 (requiring a prisoner to exhaust available administrative remedies before filing suit in federal court advances the policy justifications of the PLRA—to "return[ ] control of the inmate grievance process to prison administrators, encourage[ ] the development of an administrative record, and perhaps settlements, within the inmate grievance process, and reduc[e] the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits" (citation and internal quotation marks omitted)); Jones, 549 U.S. at 204 (explaining that the exhaustion requirement "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court").

## IV.   CONCLUSION

Accordingly, for all of the foregoing reasons, the Court will grant Defendants' motion for summary judgment.  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

Plaintiff a copy of the docket sheet.  See (id.).  Despite having sent Plaintiff a copy of the docket sheet, reflecting Defendants' pending motion for summary judgment, Plaintiff has not submitted any filings to the Court or sought an extension of time in which to do so.